```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                              )
UNITED STATES OF AMERICA,     )
                              )
          v.                  )     Criminal Action
                              )     No. 15-10117-PBS
ANDREW GORDON,                )
                              )
               Defendant.     )
_____)
```

**MEMORANDUM AND ORDER**

March 14, 2016

Saris, C.J.

**INTRODUCTION**

Defendant Andrew Gordon was charged in a superseding indictment with five counts of violating 18 U.S.C. § 1958, the federal murder-for-hire statute. Each count refers to a separate use of the mail or telephone during an alleged murder-for-hire plot targeting two individuals. Prior to trial, Defendant moved to dismiss the superseding indictment on the basis that the counts are multiplicitous and duplicitous. He was convicted of all five counts on March 4, 2016. The Court orally denied the motion to dismiss on February 25, 2016. The Court now issues its written opinion **DENYING** Defendant's Motion to Dismiss (Docket No. 59).

**DISCUSSION**

A prosecution is multiplicitous when the government charges a defendant twice for what is essentially a single crime. See United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012) (pointing out, for example, "when a felon has violated 18 U.S.C. § 922(g) by possessing a firearm, it would be multiplicitous to charge the felon with two counts simply because he had it yesterday and today").

When "a claim of multiplicity is premised on an indictment alleging several violations of a single statutory provision, an inquiring court must determine whether there is a sufficient factual basis to treat each count as separate." United States v. Stefanidakis, 678 F.3d 96, 100–01 (1st Cir. 2012). The requisite inquiry is whether each count can be treated as a "distinct unit of prosecution." United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011). "Congress's intent is paramount on this point: the legislature may castigate a particular act by exposing the actor to several prosecutions and punishments, or it may specify that the act should only be subject to a single unit of prosecution." Chiaradio, 684 F.3d at 272; see also Pires, 642 F.3d at 15 ("The critical inquiry is whether Congress intended to punish each statutory violation separately." (quoting Jeffers v. United States, 432 U.S. 137, 155 (1977))).

Defendant argues that the proper unit of prosecution is the overarching "plot to kill." See Docket No. 59 at 3. The government responds that the proper unit of prosecution is every different use of the mail or telephone with the intent that a murder be committed. See Docket No. 60 at 2.

Although the First Circuit has not yet decided this question in the context of § 1958, the Sixth Circuit held in an unpublished opinion that the "plain language of the statute makes clear that the evil it intended to proscribe was the interstate travel and use of facilities in interstate commerce with intent that a murder-for-hire be committed." United States v. Ng, 26 F. App'x 452, 462 (6th Cir. 2001) (concluding that the defendant's travel and his causing another to travel were properly charged as separate offenses "even though they were committed as part of an ongoing scheme to commit murder-for-hire"). I agree that the proper unit of prosecution is a defendant's use of the mail or telephone with the requisite intent that a murder be committed.

To assess what Congress proscribed in enacting the murder-for-hire statute, the Court must analyze the statutory language. Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010). The murder-for-hire statute states in relevant part:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the

3

>intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958(a).

The plain meaning of the statutory text demonstrates that the government has it right: the prohibited act is the use of the mail or interstate commerce facilities if that use is accompanied by an intent that a murder be committed and that it be committed as consideration for the receipt of something of pecuniary value. See, e.g., United States v. Ritter, 989 F.2d 318, 321 (9th Cir. 1993) (listing the three elements).

Interpretations of an analogous statute, the Travel Act, bolster this reading. "In interpreting 18 U.S.C. § 1958, it is entirely appropriate to look to case law construing the Travel Act, 18 U.S.C. § 1952." United States v. Houlihan, 92 F.3d 1271, 1292 (1st Cir. 1996) (citing United States v. Edelman, 873 F.2d 791, 794 (5th Cir. 1989), for the proposition that "Travel Act jurisprudence is a proper referent because 'the obvious purpose' of the murder-for-hire statute is 'to supplement' the Travel Act") (also citing S. Rep. No. 225, at 306 (1983), reprinted in

4

1984 U.S.C.C.A.N. 3182, 3485, as "noting that the murder-for-hire statute 'follows the format' of the Travel Act").

The unit of prosecution in Travel Act cases has been defined as each use of the mail or interstate commerce facilities. See, e.g., United States v. Polizzi, 500 F.2d 856, 897-98 (9th Cir. 1974). "[T]he language of the statute seems unambiguous. The offense defined is an act of travel or use of an interstate facility, with the requisite intent, plus subsequent performance of another act of the kind specified in the statute." Id. at 897 (rejecting the argument that Congress "did not intend to allow prosecution as a separate offense of each of several acts of travel where the illegal intent during each act related to the same unlawful activity"); see also United States v. Jabara, 644 F.2d 574, 578 (6th Cir. 1981) (holding that "each Travel Act violation may provide a separate unit of prosecution").

In contrast, because the bank fraud statute prohibits knowingly executing "a scheme or artifice to defraud a financial institution," 18 U.S.C. § 1344, the First Circuit held that the proper unit of prosecution is the overall "scheme" to defraud. See United States v. Lilly, 983 F.2d 300, 302-03 (1st Cir. 1992). Compare the First Circuit's analysis in wire fraud cases. The wire fraud statute is violated when one "transmits or causes to be transmitted by means of wire, radio, or television

5

communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. Distinguishing the bank and wire fraud statutes, the First Circuit emphasized that "the former statute criminalizes only the execution, or attempted execution, of a scheme to defraud a bank . . . , the latter statutes criminalize specifically enumerated actions, e.g., interstate wire transmissions . . . so long as any such action is for the purpose of executing a scheme to defraud." United States v. Luongo, 11 F.3d 7, 9 (1st Cir. 1993).

The legislative history does not support a different reading. Defendant cites a Senate Judiciary Committee Report in support of his argument that the use of interstate commerce facilities is solely relevant for jurisdictional purposes. See Docket No. 59 at 2-3 ("The element of interstate travel or use of facilities of interstate commerce is nothing more than a jurisdictional requirement, not the gravamen of the offense."). The cited report does state that § 1958 applies "when a murder is committed or planned as consideration for something of pecuniary value and the proper federal nexus, such as . . . use of the mails, is present." S. Rep. No. 225, at 305. But that report also explains that the "gist of the offense is the travel in interstate commerce or the use of the facilities of interstate commerce or of the mails with the requisite intent,"

6

noting that the crime is complete "whether or not the murder is carried out or even attempted." Id. at 306. Because "legislative history that is in itself inconclusive will rarely, if ever, overcome the words of a statute," Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 698 (1st Cir. 1994), the Court finds the legislative history does not negate the statute's text, which outlaws each use of the mail or other facility of interstate commerce.

Defendant also argues that the counts here are duplicitous in that they allegedly join in a single count two or more distinct and separate offenses because there are two victims who were allegedly targeted in the murder-for-hire scheme. See Docket No. 59 at 3-4 (citing United States v. Verrechia, 196 F.3d 294, 297 (1st Cir. 1999)). Defendant's multiplicity and duplicity arguments are intertwined; only if the Defendant has properly defined the unit of prosecution as the "plot to kill" would the counts here be duplicitous. Because the Court concludes that the proper unit of prosecution is each use of interstate commerce facilities, the five counts here are neither duplicitous nor multiplicitous.

## ORDER

Defendant's Motion to Dismiss (Docket No. 59) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

7